UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,           )
                                    )
                  Plaintiff,        )
                                    )
     VS.                            ) No. 4:17-CR-298(RLW)
                                    )
MICHAEL A. DeSILVA, JR.,            )
                                    )
                  Defendant.        )
_____)


SENTENCING HEARING
BEFORE THE HONORABLE RONNIE L. WHITE
AUGUST 8, 2018
ST. LOUIS, MISSOURI


FOR THE PLAINTIFF:

    GILBERT SISON
    OFFICE OF U.S. ATTORNEY
    111 South Tenth Street, Suite 2000
    St. Louis, MO  63102
    (314) 539-2200

FOR THE DEFENDANT:

    CHARLES BANKS
    OFFICE OF FEDERAL PUBLIC DEFENDER
    1010 Market Street, Suite 200
    St. Louis, MO  63101
    (314) 241-1255

    Proceedings recorded by mechanical stenography;
transcript produced by computer.

_____

DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
Federal Official Court Reporter
111 South Tenth Street, Third Floor
St. Louis, MO  63102
(314) 244-7449

1          (PROCEEDINGS BEGAN AT 11:00 AM.)

2          THE COURT:  Counsel, are we ready to proceed?

3          MR. SISON:  The United States is ready, Your Honor.

4          MR. BANKS:  Yes, Your Honor, we're ready.  Thank you.

5          THE COURT:  This is the *United States versus Michael*

6    *A. DeSilva*, Cause No. 4:17-CR-00298-1(RLW).  The Government is

7    represented by Assistant United States Attorney Gilbert Sison.

8    Defense counsel is Charles Banks, and Mr. DeSilva is here in

9    person.

10         Sir, on May the 8th, 2018, you pled guilty to the

11   charge of aiding and abetting in the use of counterfeit access

12   devices.  Do you remember that?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Do you understand that you're here this

15   morning for your sentencing?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Have you and Mr. Banks had an opportunity

18   to read and discuss the Presentence Report?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Mr. Sison, have you read it?

21         MR. SISON:  Yes, Your Honor.

22         THE COURT:  Are there any objections as to the

23   factual accuracy of the report?

24         MR. SISON:  Nothing from the United States,

25   Your Honor.

1          THE COURT:  Mr. Banks, you filed some objections.

2    Are those still -- Do those still need be addressed?

3          MR. BANKS:  Yes, Your Honor.  They -- They only have

4    to do with the criminal history calculation as it relates to

5    the misdemeanor charge in Paragraph 44.  Beyond that, no

6    further objections.

7          THE COURT:  Mr. Sison, do you wish to speak to that

8    objection?

9          MR. SISON:  Your Honor, I mean, obviously, you know,

10   he's contesting the fact that he didn't have counsel for that,

11   and then all we can go on is what the Presentence

12   Investigation Report found.  And so the Government's position

13   would be that those -- those points are valid and should be

14   assigned.  And if we need to do it, I guess we can bring up

15   the Probation Officer to testify about it.

16         THE COURT:  I have a copy of the report.  We don't

17   need to do it.  I'm going to overrule ---

18         MR. SISON:  The Government's position would be that

19   it should remain.

20         THE COURT:  I'm going to overrule the objection to

21   Paragraph 44, 46 and 82.  Those are the three that it's

22   mentioned in.

23         MR. BANKS:  Okay.  I understand, Judge, and we -- we

24   understood the Probation Office and the Government from the

25   response and the final PSR.  So I understand the Court's

1   ruling.

2          THE COURT:  There being no further objections to the

3   factual statements contained in the Presentence Report, the

4   Court adopts these statements as its findings of fact.

5          The Court determines that the applicable guidelines

6   are:  Total Offense Level of 8, Criminal History Category of

7   IV.  The guideline provisions calls for a 10- to 16-months

8   imprisonment.

9          Under Local Rule 13.05, it is the procedure of this

10  Court to hold a bench conference in every plea and every

11  sentencing hearing.  We will now conduct the bench conference,

12  and this portion of the transcript of this hearing will be

13  filed under seal.

14         Counsel, please approach sidebar.

15         (Pursuant to Local Rule 13.05, a bench conference was

16  held on the record and placed under seal; after which the

17  following proceedings continued in open court:)

18         THE COURT:  Do either party know of any reason why

19  this Court should not know proceed with the imposition of

20  sentence?

21         MR. SISON:  No, Your Honor.

22         MR. BANKS:  No, Your Honor.

23         THE COURT:  Mr. Banks, do you wish to make a

24  statement or present any information in mitigation of the

25  sentence?

1          MR. BANKS:  Just briefly, Your Honor.

2          The PSR in this case is comprehensive, and it

3    outlines reasons why the Court might consider a variance and,

4    you know, we would like to incorporate those bases in our

5    argument, but I'd like to highlight just the remarkable family

6    support that Mr. DeSilva has.

7          If he is released on supervised release, he's ready

8    to be successful.  He -- We're joined in court by -- by the

9    mother of his children, by his mother.  Danielle, the mother

10   of his children, came up from Arkansas.  His mom flew in from

11   New Jersey to be here today.  We've supplied the Court with

12   numerous letters in support of Mr. DeSilva.

13         He knows that he's got tremendous family support.  It

14   has been his focus since I've known him to get out to start

15   working to -- to reciprocate and to help support them.  And

16   frankly, Your Honor, my perception of dealing with Mr. DeSilva

17   and his family and with this case is that's sort of wrapped up

18   in this case.

19         When he got out of the Bureau of Prisons, he had an

20   overwhelming desire to help support his family financially.

21   He's employment ready.  He worked very hard as a -- as a

22   fitness instructor.  He's able to continue doing that, but he

23   fell in in this case to a way that -- to try to make some easy

24   and fast money, and he understands he's paid the price for

25   that.  He's put his family through tremendous turmoil as he's

1    been incarcerated these past nine months as a result of his

2    actions, and he understands that he cannot go down that path

3    any further.  And I think he's contrite and sincere in saying

4    that, and I think he wishes to address the Court on that

5    matter here in just a moment.

6        But given the family support that he has, given his

7    commitment to staying on the right path and, by all

8    indications, his ability to work and to conform his behavior

9    to supervision, we do respectfully ask for a sentence of time

10   served in this case.  That will allow him to take care of

11   whatever is going to happen with the Philadelphia case and

12   with the New York case in a timely manner and then get out

13   there and work and support his family and pay off some of the

14   restitution that we anticipate will be ordered as a part of

15   the Court's Order here.

16       In -- In communicating with the lawyers for those two

17   cases, it is my understanding that neither of those

18   jurisdictions will extradite Mr. DeSilva; that he will --

19   After he's done serving whatever sentence the Court imposes

20   here, he will be released on supervised release.  And then it

21   can be a condition of that release for him to go and take care

22   of those cases, which he will do right way, and I think that

23   those cases will probably be resolved without confinement.

24       I realize that time served amounts to a variance,

25   given that he's only done about five months' imprisonment on

1    this case.  He did do about four months before that while he

2    was incarcerated in New York.

3          I would just ask the Court to consider that the

4    reason his guidelines are so high are sort of technical.  I

5    mean he -- he gets two points on criminal history for a case

6    that he got six months of probation on back in 2016.  And a

7    month before that expired, apparently he was suspended.  He

8    had no reason to believe it was suspended.  In fact, he

9    thought it had lapsed.  Otherwise, he would have taken care of

10   that.

11         The *Guidelines* don't really consider that.  They just

12   give him the extra two criminal history points because he was

13   under supervision, even though he thought his supervision was

14   over.  And I think he reasonably felt that way.  He got no

15   correspondence from that court.  He's been arrested a couple

16   of times since, and they did not, you know, put any holds on

17   him or anything for that.

18         Additionally, he gets one point which puts him in

19   Category IV for a marijuana charge for which he received a

20   fine.  That was the basis of our objection.  So he's very

21   close to being in a -- in a guideline range that would be six

22   to twelve months.  And given that he's served five months'

23   imprisonment, I think we're very close to what the guideline

24   range might be without a, you know, hypertechnical reading of

25   that.

1    So we do respectfully ask the Court for a variance to

2    impose a sentence of time served, to include whatever

3    conditions the Court wants to put on Mr. DeSilva to ensure his

4    success and for him to pay back the restitution.

5         Thanks, Your Honor.

6         THE COURT:  Mr. DeSilva, do you wish to address the

7    Court?

8         THE DEFENDANT:  Yes, Your Honor.

9         THE COURT:  Proceed.

10        THE DEFENDANT:  First, I'd like to thank you for the

11   opportunity to address the Court.

12        I want to say "thank you" to my support system for

13   coming, and I apologize for my actions.  It causes a problem

14   for all of us, and I made a -- I made a stupid decision.  And

15   I just feel that if you gave me the opportunity to show you,

16   you wouldn't be upset or feel that you did anything by going

17   under the *Guidelines* to give me time served or even the lower

18   end of the *Guidelines*.  It was just stupid, and I apologize

19   for wasting the Court's time.

20        THE COURT:  Mr. Sison?

21        MR. SISON:  Your Honor, I will give Mr. DeSilva

22   credit for saying this.  Normally, you know, a defendant comes

23   in and says, "I apologize to the Court," but it's really the

24   family they should be apologizing to.  So I grant him that.

25        I will say this:  You know, looking back at his

1   criminal history, I -- I reviewed all the letters from

2   Mr. DeSilva's family.  They're actually quite good.  And

3   there's no question that he appears to be a loving father.

4   The Government's concern, obviously, was this pattern that he

5   got into in the last couple of years where, you know, he was

6   committing these fraud crimes and these crimes all within a

7   very short span, and one of the crimes he was not convicted

8   but he's arrested for while he was on supervision.

9           And so hopefully -- I always like to give people a

10  second chance, and I think, you know, if he's got this support

11  and everything that he says he does -- and apparently they do

12  and they're pretty strong -- that it can give him some

13  support.  The question is whether he wants to do that.

14          That being said, I think the Government's position

15  is:  While we can't support a variance, we would recommend the

16  low end of the range of the *Guidelines*, given all the

17  circumstances that are out there.

18          THE COURT:  After hearing from both counsel and

19  Defendant, reviewing the Presentence Report and Defendant's

20  letters of support and Defendant's objections to the

21  Presentence Report, the Court is now ready to proceed with the

22  imposition of sentence.

23          The instant offense involved a conspiracy to travel

24  from Pennsylvania to the Eastern District of Missouri to

25  purchase cigarettes with fraudulent access devices.  The

1    Defendant was in possession of at least 24 counterfeit access

2    devices used to purchase merchandise, resulting in losses

3    totaling $6,385.55.

4            The Defendant's criminal history includes four

5    drug-related convictions, including one federal drug

6    conviction, one theft-related conviction, and one conviction

7    for possession of a firearm in furtherance of a drug

8    trafficking crime.  In addition, the Defendant was on

9    probation when he committed the instant offense.

10            The Defendant's parents divorced when he was

11    approximately 16 years old as a result of the Defendant's

12    father's alcohol and drug addiction.  In addition, the

13    Defendant has a history of trauma, including suffering gunshot

14    wounds on two separate occasions.

15            As such, in light of the advisory guidelines range

16    and the provisions of 18 USC Section 3553(a), a sentence of

17    ten months' imprisonment, which represents the low end of the

18    guidelines range, I believe, would be sufficient, but not

19    greater than necessary, to comply with the purposes set forth

20    in 18 USC Section 3553(a).

21            Therefore, pursuant to the Sentencing Reform Act of

22    1984 and the provisions of 18 USC Section 3553(a), it is the

23    judgment of the Court that the Defendant, Michael A. DeSilva,

24    is hereby committed to the custody of the Bureau of Prisons

25    for a term of ten months.  This sentence shall run consecutive

1    to any sentence imposed in Docket No. CP-14-CR-0001190-2016 in

2    the Court of Common Pleas, Centre County, Pennsylvania; in

3    Docket No. 2017-CF-84 in Circuit Court, Bond County, Illinois;

4    and in Docket No. 2009SN042958 in Criminal Court, Kings

5    County, New York.

6         While in the custody of the Bureau of Prisons, it is

7    recommended the Defendant be evaluated for participation in

8    the Residential Drug Abuse Program.

9         It is recommended the Defendant be evaluated for

10   participation in an occupational/educational program,

11   specifically in Business.  Such recommendations are made to

12   the extent they are consistent with the Bureau of Prisons'

13   policies.

14        Upon release from imprisonment, the Defendant shall

15   be placed on supervised release for a term of three years.

16        Within 72 hours of release from the custody of the

17   Bureau of Prisons, the Defendant shall report in person to the

18   Probation Office in the district to which the Defendant is

19   released.

20        Restitution:  It is further ordered that pursuant to

21   18 USC Section 3663(a), for each Count I, the Defendant shall

22   make restitution in the total amount of $6,685.55, payable to

23   Scotiabank in the amount of $4,480.12; Jefferson Bank of

24   Missouri, $513.92; Central Trust Bank, $689.61; Central Bank

25   of Moberly, $701.90.

1          This obligation is joint and several with Shenita C.

2    Howard in this case, meaning that no further payments shall be

3    required after the sum of the amounts actually paid by all

4    defendants has fully covered the compensable injuries.

5    Payments of restitution shall be made to the Clerk of Court

6    for transfer to the victims.  The interest requirement for

7    restitution is waived.

8          All criminal monetary penalties are due in full

9    immediately.  The Defendant shall pay all criminal monetary

10   penalties through the Clerk of Court.  If the Defendant cannot

11   pay in full immediately, then the Defendant shall make

12   payments under the following minimum payment schedule.

13         During incarceration, it is recommended the Defendant

14   pay criminal monetary penalties through an installment plan in

15   accordance with the Bureau of Prisons' Inmate Financial

16   Responsibility Program at the rate of 50 percent of all funds

17   available to the Defendant.

18         If the Defendant owes any criminal monetary penalties

19   when released from incarceration, then the Defendant shall

20   make payments in monthly installments of at least $200 or no

21   less than ten percent of the Defendant's gross earnings,

22   whichever is greater, with payments to commence no later than

23   30 days after release from imprisonment.

24         Until all criminal monetary penalties are paid in

25   full, the Defendant shall notify this Court and this

1    District's United States Attorney's Office, Financial

2    Litigation Unit, of any material changes in the Defendant's

3    economic circumstances that might affect the Defendant's

4    ability to pay criminal monetary penalties.

5            The Defendant shall notify this District's

6    United States Attorney's Office, Financial Litigation Unit, of

7    any change of mailing or residence address that occurs while

8    any portion of the criminal monetary penalties remain unpaid.

9            It is recommended that the Defendant participate in

10   the Financial Responsibility Program while incarcerated, if

11   that is consistent with the Bureau of Prisons' policies.

12           You must comply with the standard conditions of

13   supervision that have been adopted by this Court.  You must

14   also comply with the following Special Conditions.

15           If it is determined there are costs associated with

16   any services provided, you shall pay those costs based on a

17   co-payment fee established by the Probation Office.

18           You must submit to substance abuse testing to

19   determine if you've used a prohibited substance.  You must not

20   attempt to obstruct or tamper with the testing methods.

21           You must participate in a Substance Abuse Treatment

22   Program and follow the rules and regulations of that program.

23   The Probation Officer will supervise your participation in the

24   program.

25           You must submit your person, property, house,

1    residence, vehicles, computers, other electronic

2    communications or data storage devices or media or office to a

3    search conducted by a United States Probation Officer.  You

4    must warn any other occupants that the premises may be subject

5    to searches pursuant to these conditions.  The Probation

6    Officer may only conduct a search -- only -- only conduct a

7    search under this condition when reasonable suspicion exists

8    that you have violated a condition of supervision and that the

9    areas to be searched contain evidence of this violation.

10           You must provide the Probation Officer with access to

11   any requested financial information and authorize the release

12   of any financial information.  The Probation Office may share

13   this financial information with the U.S. Attorney's Office.

14           You must not incur any new credit charges or open

15   additional lines of credit without the approval of the

16   Probation Officer.

17           You must apply all monies received from any

18   anticipated and/or unexpected financial gains, including any

19   income tax refunds, inheritances or judgments, to the

20   outstanding Court-ordered financial obligation.  You must

21   immediately notify the Probation Office of the receipt of any

22   of the indicated monies.

23           If the judgment imposes a financial penalty, you must

24   pay the financial penalty in accordance with the Schedule of

25   Payments sheet of the judgment.

1           You must also notify the Court of any changes in

2    economic circumstances that might affect your ability to pay

3    this financial penalty.

4           The Court finds that the Defendant does not have the

5    ability to pay a fine.

6           It is further ordered that the Defendant shall pay to

7    the United States a Special Assessment of $100 which shall be

8    due immediately.

9           Under 21 USC Section 853, the Defendant has forfeited

10   all of his right, title and interest in the property

11   previously identified in the Preliminary Order of Forfeiture

12   granted by this Court on 8-18 -- on 8-8-18.

13          Mr. DeSilva, do you have any questions about the

14   conditions of supervision?

15          THE DEFENDANT:  No, I do not, Your Honor.

16          THE COURT:  I must now advise you that it is your

17   right to file a Notice of Appeal from this sentence within 14

18   days from today.  Failure to do so within that 14 days will be

19   deemed a waiver of your right to appeal.  You need to speak

20   with Mr. Banks about that before you leave here this morning.

21   Do you understand that?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Do either party have any objections to

24   the Court's findings of fact, conclusions of law, or to the

25   manner in which this sentence was pronounced?

1          MR. SISON:  Nothing from the United States,

2    Your Honor.

3          MR. BANKS:  Just those objections articulated in our

4    objections to the PSR, Your Honor.  Beyond that, no.

5          THE COURT:  Those objections are noted for the

6    record.  This sentence will be imposed as stated.

7          Is there anything further from the Government?

8          MR. SISON:  No, Your Honor.  Thank you.

9          THE COURT:  Mr. Banks?

10          MR. BANKS:  No, Your Honor.  Thank you.

11          THE COURT:  Good luck to you, Mr. DeSilva.  That

12    concludes this hearing.  You're remanded to the custody of the

13    U.S. Marshal.

14          THE CLERK:  All rise.

15          (Hearing adjourned at 11:25 AM.)

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL REPORTER

      I, Deborah A. Kriegshauser, Federal Official Realtime Court Reporter, in and for the United States District Court for the Eastern District of Missouri, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

      Dated this 18th day of January, 2019.


                    /s/ Deborah A. Kriegshauser
                    _____
                    DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
                    FEDERAL OFFICIAL COURT REPORTER